# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | CIVIL ACTION NO. |
| Plaintiff, | |
| v. | COMPLAINT |
| BARRETT DISTRIBUTION CENTERS, LLC and SUPREME STAFFING, LLC, | JURY DEMAND |
| Defendants. | |

## NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices based on retaliation and to provide appropriate relief to Francisco Alvarez (Alvarez) who was harmed by the discriminatory practices. As alleged with greater particularity in the paragraphs below, Barrett Distribution Centers, LLC, (Barrett) acting as a joint employer with Supreme Staffing, LLC, (Supreme) violated Title VII of the Civil Rights Act of 1964 when it terminated Alvarez in retaliation for complaining that, among other things, Barrett and Supreme's other client companies discriminated against applicants because of their race and national origin.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The unlawful employment practices alleged in this Complaint were committed within the jurisdiction of the United States District Court for the Western District of Tennessee. Venue is in this Court.

**PARTIES**

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant Barrett, a warehouse distributor, has continuously been doing business in the State of Tennessee and the City of Memphis and has continuously had at least 15 employees.

5. At all relevant times, Defendant Barrett has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6. At all relevant times, Defendant Supreme Staffing, LLC, a staffing agency, has continuously been doing business in the State of Tennessee and the City of Memphis and has continuously had at least 15 employees. While Supreme is headquartered in Memphis, the company has offices in Tennessee, Georgia, Nevada, Louisiana, Indiana, Florida, Ohio, Delaware, New Jersey, Connecticut, South Carolina, and Kentucky.

7. At all relevant times, Defendant Supreme has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCESS

8. More than thirty days before the institution of this lawsuit, Alvarez filed a charge with the Commission, Charge No. 490-2019-01594, alleging, among other things, that Barrett violated Title VII when it terminated him after he complained of national origin discrimination.

9. On August 30, 2022, the Commission issued a Letter of Determination to Defendant notifying it that the Commission found reasonable cause to believe Defendant violated Title VII and invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11. The Commission, however, could not secure an acceptable conciliation agreement.

12. On September 27, 2022, the Commission issued Defendant a Notice of Failure of Conciliation.

13. More than 30 days before the institution of this lawsuit, Alvarez filed a charge with the Commission, Charge No. 490-2019-00801, alleging Supreme violated Title VII.

14. On July 7, 2022, the Commission issued to Supreme a Letter of Determination finding reasonable cause to believe Supreme violated Title VII and inviting Supreme to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

15. The Commission engaged in communications with Supreme to provide Supreme the opportunity to remedy the discriminatory practices described in the Letters of Determination.

16. The Commission could not secure from Supreme an acceptable conciliation agreement.

17. On August 22, 2022, the Commission issued to Defendant Supreme a Notice of Failure of Conciliation to Defendant Supreme advising it that the Commission could not secure a conciliation agreement acceptable to the Commission from Defendant Supreme.

18. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

### Count I: Retaliatory Transfer

19. Since at least on or around January 2019, Barrett and Supreme engaged in unlawful employment practices at its Memphis facilities in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

20. The unlawful employment practices include retaliating against Alvarez by transferring him from Barrett's Memphis facility because of his complaints of race and national origin discrimination.

21. Barrett is a direct-to-consumer fulfillment service provider with over 20 facilities across the United States.

22. Barrett staffs its facilities with workers it obtains from temporary staffing agencies.

23. One of the staffing agencies Barrett used to staff workers is Supreme.

24. Supreme placed Alvarez at Barrett as the on-site manager for Supreme employees.

25. Supreme and Barrett are Alvarez's joint employer.

26. Barrett was responsible for "directly" supervising "all work performed by Supreme associates."

27. Barrett monitored and supervised Supreme employees' results and performance.

28. Barrett also scheduled Supreme staff, including Alvarez's work schedule, and determined which Supreme workers could work on its jobsite.

29. Barrett routinely scheduled Alvarez to work between 50-55 hours per week.

30. Barrett alleges it evaluated Alvarez's performance and was unhappy with it, and, as the evaluator of Alvarez's performance, requested his removal.

31. Barrett could approve or deny which Supreme workers were allowed to work on its job site.

32. Alvarez reported to Barrett's Memphis facility to perform his job duties.

33. Barrett supervised Alvarez and directed his daily tasks and responsibilities.

34. Barrett supervised and critiqued Alvarez's work performance.

35. Barrett could remove Alvarez from its work facility.

36. Alvarez served as the designated point of contact for all Supreme employees staffed with Barrett and ensured Supreme provided Barrett with sufficient temporary staff at the frequency and levels requested by Barrett.

37. While working as the on-site manager at Barrett, Alvarez witnessed Barrett giving preferential treatment to non-Hispanic workers.

38. Alvarez witnessed Barrett's "English only" policy at the Memphis facility.

39. Alvarez witnessed Barrett denying permanent job opportunities to Hispanic workers.

40. Alvarez also witnessed Barrett denying Hispanic workers other job opportunities simply because they could not speak English.

41. In February 2019, Alvarez witnessed Constance Pruitt Armstrong, Barrett's Human Resources Manager, rip up Delisa Trinidad's, Hispanic, application for employment after Trinidad could not complete the "English" application without assistance.

42. Other Spanish speaking persons were present on the jobsite and tried to assist Trinidad, but Armstrong refused to accept Trinidad's application.

43. Alvarez complained to Walter Northam, Barrett's Operations Manager, about Armstrong's discriminatory treatment towards Trinidad.

44. Northam did not address Alvarez's complaint.

45. Alvarez also reported the discriminatory treatment to Chad Deaton, Barrett's General Manager.

46. Deaton, like Northam, did not address Alvarez's complaints.

47. Less than a month after Alvarez complained to Barrett about the discriminatory treatment against Trinidad and other Hispanics, Barrett contacted Supreme and requested that Supreme remove Alvarez from Barrett's Memphis location.

48. Barrett requested that Supreme remove Alvarez from its worksite in retaliation for Alvarez having complained about the discriminatory treatment.

49. Supreme complied with Barrett's request to remove Alvarez as Barrett's on-site supervisor.

50. The unlawful employment practices described above were retaliatory and violate Title VII.

51. The effect of the practices complained of in the paragraphs above affected the terms of Alvarez's employment and deprived him of equal employment opportunities, and otherwise adversely affect his status as an employee because of his protected complaints about racial and national origin discrimination.

52. The unlawful employment practices complained of in the above paragraphs above were intentional.

53. The unlawful employment practices complained of in paragraphs above were done with malice or with reckless indifference to Alvarez's federally protected rights.

### Count II: Retaliatory Discharge

54. After Barrett and Supreme removed Alvarez from its jobsite, Supreme demoted Alvarez from an account supervisor to a recruiter and reduced his hours from 55 hours per week to 40 hours per week.

55. As a recruiter, Alvarez worked an account with Aaron Thomas, LLC.

56. While working the account, Alvarez discovered Aaron Thomas preferred Hispanic employees over African American employees.

57. Alvarez contends that he was instructed to only give open jobs to Hispanics.

58. Alvarez again complained about the discriminatory and unlawful preferences.

59. Along with his work on the Aaron Thomas account, and although no longer assigned as the on-site manager for Barrett's account, Alvarez continued to assist with employee placement at Barrett.

60. In March 2019, Barrett learned that Supreme allowed Alvarez to continue to work on its account.

61. Barrett again told Supreme that it did not want Alvarez to work on its account because of Alvarez's previous issues with Barrett.

62. In response to Barrett's complaint, Alvarez was terminated.

63. The termination occurred on March 22, 2019, less than two months after Alvarez initially complained about discrimination to Barrett, and just after Barrett complained that Alvarez continued to work on its account.

64. Defendants fired Alvarez because of his complaints about discrimination.

65. The effect of the practices complained of in the paragraphs above affected the terms of Alvarez's employment and deprived him of equal employment opportunities and otherwise adversely affect his status as an employee because of his protected complaints about racial and national origin discrimination.

66. The unlawful employment practices complained of in the above paragraphs above were intentional.

67. The unlawful employment practices complained of in the paragraphs above were done with malice or with reckless indifference to Alvarez's federally protected rights.

## **PRAYER FOR RELIEF**

Wherefore, the Commission requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from retaliating against employees who make protected complaints about discriminatory treatment.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities which eradicate the effects of its past and present unlawful employment practices.

C.  Order Defendants to make Francisco Alvarez whole by providing appropriate backpay with prejudgment interest in amounts to be determined at trial and other affirmative relief necessary to eradicate the effects of their unlawful employment practices.

D.  Order Defendants to make Francisco Alvarez whole by providing him compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the paragraphs above, in amounts to be determined at trial.

E.  Order Defendants to make Francisco Alvarez whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described in the paragraphs above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.  Order Defendants to pay Francisco Alvarez punitive damages for their malicious and reckless conduct, as described in the paragraphs above, in amounts to be determined at trial.

G.  Grant such further relief as the Court deems necessary and proper in the public interest.

H.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

ATTORNEYS FOR PLAINTIFF

GWENDOLYN YOUNG REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

FAYE A. WILLIAMS
Regional Attorney
TN Bar No. 11730
faye.williams@eeoc.gov

AMY BLACK
Assistant Regional Attorney
TN Bar No. 016102
amy.black@eeoc.gov

*/s/ Roslyn Griffin Pack*
ROSLYN GRIFFIN PACK
Trial Attorney
MS Bar No. 103317
roslyn.griffin-pack@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Memphis District Office
200 Jefferson Avenue, Suite 1400
Memphis, Tennessee 38103
(901) 701-6445